UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CURTIS WADE WOODWARD,<br><br>        Plaintiff,<br><br>    v.<br><br>SIMON TIERNEY,<br>CALEB MANLEY,<br><br>        Defendants. | No. 2:21-cv-00472-JPH-MKK |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Curtis Woodward, an Indiana prisoner, has sued Defendants Sergeant Manley and Officer Tierney pursuant to 42 U.S.C. § 1983 alleging claims of excessive force and deliberate indifference to his serious medical needs. Defendants have moved for summary judgment on Mr. Woodward's claims. For the reasons below, Defendants' motion for summary judgment, dkt. [43], is **GRANTED in part and DENIED in part**. The motion is **granted** with respect to the deliberate indifference claims and **denied** with respect to the excessive force claims.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

1

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

At all times relevant to the complaint, Mr. Woodward was an inmate at Wabash Valley Correctional Facility ("WVCF"). On August 23, 2021, Mr. Woodward threw an unknown liquid on Officer Lafray, who is not a Defendant in this case, as he walked past Mr. Woodward's cell. Dkt. 44-2 at 0:20—0:21. Although Mr. Woodward attests that the liquid was water, *see* dkt. 62 at 3, Officer Lafary reported that the liquid smelled like urine, *see* dkt. 44-4 at 1. When Sgt. Manley and Ofc. Tierney responded to the report and ordered Mr. Woodward to cuff up, he refused their orders. *Id.* Mr. Woodward maintains that he "only resisted cuffing up briefly while requesting to speak to Sgt. Martinez about being fed." Dkt. 63 at 6.

### A. Use of Chemical Spray

After Mr. Woodward refused to cuff up, Sgt. Manley sprayed Mr. Woodward him with oleoresin calcium ("O.C."), commonly known and referred to as pepper spray. The parties dispute other facts relating to use of the O.C. the spray. Sgt. Manley states that Mr. Woodward "appeared to be using a razor blade-like object to harm himself" and that he sprayed O.C. to "stop [Mr.] Woodward from harming

3

himself." Dkt. 44-4 at 1. Mr. Woodward denies that he ever attempted to harm himself. Dkt. 62 at 4; dkt. 63 at 5-6.

Sgt. Manley attests that the spray lasted "for one second on the target facial area." Dkt. 44-4 at 1. Mr. Woodward states that he was sprayed "for much longer, and the pain it caused made it seem like it was a whole can of spray[.]" Dkt. 63 at 8. Video of the incident shows that Sgt. Manley directed the O.C. spray hose into Mr. Woodward's cell for a total of 13 seconds, *see* dkt. 44-2 at 1:14–1:27, but the tip of the hose is not visible, so the video does not reveal whether O.C. was sprayed for that duration.

### B. Use of Physical Force

Shortly after being sprayed with O.C., Mr. Woodward cuffed up and was escorted to a holding cell by Sgt. Manley and Ofc. Tierney. Dkt. 44-4 at 2; dkt. 62 at 4. The parties' versions of what transpired in the holding cell differ significantly. Defendants maintain that Mr. Woodward refused to take a decontamination shower, shouted profanities, and attempted to kick Sgt. Manley during the escort, prompting them to restrain him against the back of the holding cell and release him once he resumed compliance. Dkt. 44-1 at 1; dkt. 44-4 at 2. Mr. Woodward states Officer Tierney and Sgt. Manley shoved him into the holding cell, pulled his hair, slammed his face into the wall repeatedly even though there was "no attempted kicking on [his] part." Dkt. 62 at 4-6. He also states that he was not offered a shower until four days later, dkt. 62 at 6, and that he was "yanked with a dog leash backwards, causing him to fall into a metal door," dkt. 63 at 11.

4

### C. Medical Attention

Once Mr. Woodward was restrained, Defendants contacted medical personnel to examine him. Dkt. 44-1 at 2; dkt. 44-4 at 2. Approximately five minutes after Mr. Woodward was placed in the holding cell, he was seen by Nurse T. Hill. Dkt. 62 at 6. Later that evening, Mr. Woodward was re-examined by Nurse Lantrip, who took pictures of his injuries and told Mr. Woodward that he would complete an incident report. *Id.*

### III.
### Discussion

Mr. Woodward has sued the defendants pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. He alleges that Sgt. Manley and Ofc. Tierney used excessive force against him and were deliberately indifferent to his serious medical needs. Defendants have moved for summary judgment on Mr. Woodward's claims.

### A. Excessive Force Claims

Mr. Woodward argues that Defendants used excessive force in two separate instances: (1) when Sgt. Manley sprayed him in the face with O.C ("Incident No. 1"); and (2) after Defendants escorted him to a holding cell and used physical force to restrain him ("Incident No. 2"). Defendants concede that there is a genuine issue of material fact as to the Incident No. 2. *See* dkt. 64 at 2-3 ("Defendants concede that Plaintiff's Eighth Amendment excessive force claims related to the allegations in the holding cell should survive summary judgment."). However, Sgt. Manley argues that he is entitled to summary judgement with respect to Incident No. 1 because his use of O.C. was reasonably

5

necessary to restore order. *Id.*

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar de minimis force unless the force is "'of a sort repugnant to the conscience of mankind.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)). Even if the force applied is not de minimis, it remains permissible if used "'in a good-faith effort to maintain or restore discipline.'" *McCottrell v. White*, 933 F.3d 651, 664 (7th Cir. 2019) (quoting *Wilkins*, 559 U.S. at 37). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider a number of factors, including

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*McCottrell*, 933 F.3d at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Although Sgt. Manley maintains that he sprayed Mr. Woodward to stop him from harming himself with a razor blade, *see* dkt. 44-4 at 1, Mr. Woodward attests that he never had a razor blade and never attempted to harm himself, *see* dkt. 62 at 4, 6. The parties also dispute whether Sgt. Manley sprayed Mr. Woodward for one second or a much longer duration, and the surveillance video does not resolve this factual dispute. Viewing this conflicting evidence in the light most favorable to Mr. Woodward, a reasonable jury could conclude that

because Mr. Woodward was confined to his cell and posed little or no threat to prison staff or himself, Sgt. Manley's use of force was neither de minimis nor applied in good faith.

Excessive force claims are fact-intensive, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021). For all the above reasons, Defendants' motion is denied with respect to Mr. Woodward's excessive force claim against Sgt. Manley for Incident No. 1.

### B. Deliberate Indifference to Medical Needs

Finally, Defendants have moved for summary judgment on Mr. Woodward's claims of deliberate indifference to a serious medical need. Mr. Woodward alleges that Defendants were deliberately indifferent to his discomfort from the O.C. spray. Specifically, he contends that he was not offered a shower until four days after being sprayed with O.C. and felt the lingering effects of the spray during that time. Dkt. 62 at 4. He also contends that the medical personnel who saw him immediately after the use of force "perform[ed] [a] half-hearted examination." Dkt. 62 at 5.

The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain, which includes deliberate indifference to serious medical needs." *Knight v. Grossman*, 942 F.3d 336, 341 (7th Cir. 2019) (cleaned up). To survive summary judgment, Mr. Woodward must put forth evidence that would allow a jury to find (1) that he suffered from an objectively serious medical condition and (2) that the defendants were deliberately indifferent to his medical

needs. *See Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021).

An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (cleaned up). "[C]ourts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Stone v. Couch*, No. 1:19-cv-01193-TWP-DML, 2021 WL 4247870, at *6 (S.D. Ind. Sept. 17, 2021) (collecting cases) (internal quotation omitted).

Here, Mr. Woodward does not contest that Defendants promptly sought medical attention for him following Incident No. 2. *See* dkt. 62 at 6 ("Approximately five minutes later, Nurse T. Hill came to perform a half-hearted examination."). Mr. Woodward's only complaints about Defendants' actions are that they failed to provide him a shower that day to alleviate the effects of the O.C. But the lingering effects of O.C. are not an objectively serious medical condition. *See Stone*, 2021 WL 4247870, at *6. Furthermore, to the extent that Mr. Woodward takes issue with the quality of the medical examination he received, Sgt. Manley and Ofc. Tierney cannot be held liable for alleged deficiencies with medical personnel's care. Rather, they can only be liable for the actions or omissions in which they personally participated. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). For all of these reasons, Defendants are entitled to summary judgment on Mr. Woodward's deliberate indifference claims.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [43], is **GRANTED in part and DENIED in part**. The motion is **granted** with respect to Mr. Woodward's medical deliberate indifference claims and **denied** with respect to Mr. Woodward's excessive force claims. No partial judgment shall issue.

**SO ORDERED.**

Date: 8/23/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

CURTIS WADE WOODWARD
221320
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838